**CITY OF HARTFORD et al.**

v.

**Carla A. HILLS et al.**

**Civ. No. H-75-258.**

United States District Court,
D. Connecticut.

Sept. 30, 1975.

On Motion to Reconsider and
Amend Oct. 29, 1975.

See also D.C., 408 F.Supp. 889.

Barry S. Zitser, Corp. Counsel, Hartford, Conn., Mary R. Hennessey, Connecticut Justice Commission, Hartford, Conn., Richard Bellman, Suburban Action Institute, New York, N. Y., for plaintiffs.

Peter C. Dorsey, U. S. Atty., Marjorie Wilhelm, Asst. U. S. Atty., New Haven, Conn., David Epstein, Dept. of Justice, Wash., D. C., Anthony C. Ward, Windsor Locks, Conn., Walter A. Twachtman, Jr., Rocky Hill, Conn., John D. Adams, Enfield, Conn., Philip R. Dunn, John J. Langenbach, Corp. Counsel, West Hartford, Conn., Martin B. Burke, Vernon, Conn., F. Timothy McNamara, Hartford, Conn., Lloyd Frauenglass, Bradley B. Bates, Palmer S. McGee, Jr., Thomas J. Groark, Jr., Francis Morrison, Day, Berry & Howard, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION ON PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

BLUMENFELD, District Judge.

The plaintiffs in this action are the City of Hartford, Connecticut; several City officials; and a class consisting of low-income and minority residents of the City of Hartford who presently live in inadequate, deteriorating or prohibitively expensive housing.[1] On August 11, 1975 they filed a complaint, seeking declaratory and injunctive relief, against the Secretary and other officials of the Department of Housing and Urban Development, as well as the Department itself. The complaint challenged HUD's approval of grant applications by seven suburban Connecticut communities[2] made under Title I of the Housing and Community Development Act of 1974.[3] The complaint alleged that the defendant officials had abused their discretion and failed to live up to their obligations under this 1974 law, as well as the 1964 Civil Rights Act and the 1968 Fair Housing Act. The plaintiffs allege that Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, has been violated by HUD's approval of the grants in spite of the seven towns' "history of discrimina-

---

1. The standing of the class action plaintiffs is not implicitly resolved by this ruling, but is reserved for later determination. The City of Hartford clearly has standing because of its interest in the funds at issue. *See infra* note 9.

2. The towns whose grant applications are alleged to be improper in one or more respects are: East Hartford, Enfield, Farmington, Glastonbury, Vernon, West Hartford, and Windsor Locks.

3. Adopted as P.L. 93–383, the sections which are at issue here are now found at 42 U.S.C. § 5301 et seq.

tory housing, zoning and land use practices." The claims under the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq., are based on an alleged failure of HUD to "administer affirmatively" the community development program. The plaintiffs also raised claims under 42 U.S.C. §§ 1981, 1982 and 1985, and the fifth amendment.[4] On August 26, 1975 the seven communities whose grants were being challenged were joined as additional defendants.

The plaintiffs have moved for a preliminary injunction, the defendants to dismiss, or for summary judgment.[5] The hearing on these motions was consolidated with an accelerated trial on the merits, and involved over two days of testimony, supplementing an already voluminous administrative record. At the conclusion of this hearing, on September 24, 1975, the court reserved decision on the pending motions.

■ One of the offices of the preliminary injunction is "to maintain the status quo pending a final determination of the merits." *Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319, 323 (2d Cir.), *cert. denied*, 394 U.S. 999, 89 S.Ct. 1595, 22 L.Ed.2d 777 (1969). The standards governing the issuance of such interim relief are well-established; the party seeking the injunction must combine a clear showing of probable success on the merits with the possibility of irreparable injury, or else raise substantial questions involving the merits, while demonstrating that the balance of hardships tips sharply in his/her favor. In ruling on plaintiffs' motion, the court may take into account the interests of the public as well as those of the parties before it. *Stamicarbon, N. V. v. American Cyanamid Co.*, 506 F.2d 532, 537 (2d Cir. 1974). Such considerations have been held to be particularly appropriate in cases such as this one, where there is a strong public interest involved. *PRIDE v. Community School Board of Brooklyn, N.Y. Sch. D. # 18*, 482 F.2d 257 (2d Cir. 1973). In this case:

"More is involved than the settlement of a private controversy without appreciable consequences to the public. . . . Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved." *Virginian Ry. Co. v. System Federation*, 300 U.S. 515, 552, 57 S.Ct. 592, 601, 81 L.Ed. 789 (1937).

The testimony at the hearing revealed that HUD has already issued letters of credit to the seven towns whose community development block grants are being challenged. Thus, these defendants are now free to draw upon the Treasury Department for the very funds which are the subject of this litigation. Some drafts have already been made, and the defendants have declined to stipulate that they will refrain from further drafts pending this court's ruling on the merits. The defendants argue that this situation does not constitute the sort of irreparable injury necessary to justify the interim relief requested, stating that 42 U.S.C. § 5311(a) and (b) provides adequate protection for the plaintiffs' interests.[6] If they are correct, the plaintiffs would have an adequate legal remedy for the harm that might befall them during the hiatus between hearing and final decision, and their request for an injunction ought to be denied.

---

4. This court's jurisdiction has been invoked on each of these claims, under 28 U.S.C. §§ 1331, 1343(3) and (4), and 1361. The plaintiffs also seek judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706.

5. The defendants moved to dismiss, pursuant to Rule 12(b), on several grounds, including lack of standing and failure to state a claim. In the alternative, they moved for summary judgment, pursuant to Rule 56, Fed.R.Civ.P.

6. This section establishes a procedure by which the Secretary may enforce her evaluations of grantees' performances by withholding or recouping funds. This section also establishes a procedure for the applicant/grantee to challenge such adverse determinations in the courts. Here, however, the plaintiffs challenge approved disbursements of funds to others, and want this court to overturn those decisions by the Secretary.

■ I find, however, that this statutory recoupment procedure is not sufficiently protective of the plaintiffs' interests. First, the repayment of grant moneys would be made out of future community development grants, through a reduction of payments to the recipient community in future years. Thus, if the plaintiffs prevail but the funds now in dispute have already been expended, a double loss will fall upon the plaintiffs. Not only will *these* funds be gone, expended improperly on allegedly unneeded or inappropriate projects,[7] but *future* funds, which would have been available for projects properly within the act (and thus beneficial to plaintiffs' interests) will also be lost. Second, the statute[8] and regulations[9] provide for the reallocation of funds from grants which are disapproved by the Secretary for use "first, in any metropolitan area in the same State . . . ."[10] If the grants were ultimately to be disapproved, then Hartford might be able to obtain some of these very funds. Without interim relief in the nature of a preliminary injunction, however, there is no guarantee that any of these funds will be available at the time the court renders its decision.[11]

■ In its effort to balance the equities, this court must also consider what the impact of a preliminary injunction would be on the various defendants. The federal defendants cannot possibly be harmed by the granting of interim relief, since they have already relinquished control over the funds by approving the grants and issuing letters of credit. The seven suburban communities stand in a somewhat different position. They have already commenced work on some of the projects in question, and have (in several cases) begun to draw upon the funds. In fact, a number of the projects proposed by each community were described as of "particular urgency"[12] in their grant applications. These factors merely emphasize the need of all parties for a speedy resolution of these issues. The defendant communities will hardly suffer greatly from a short interruption, even of those projects already underway, to enable this court to properly resolve the difficult and substantial questions of administrative discretion and obligation, as well as statutory construction and constitutional interpretation, raised by the plaintiffs.[13] Should the defendant communities ultimately prevail, the funds will be available once again from the Treasury Department; there is no risk to them that the granting of interim relief would effectively end the litigation. On the other hand, a denial of interim relief could well result in the defendants' having obtained all they seek from the litigation before it is even decided. *See Developments in the Law—Injunctions,* 78 Harv.L.Rev. 994, 1056 (1965), where the author points out that one of the issues raised by a motion for a preliminary injunction is "how best to create or preserve a state of affairs such that [the court] will be able . . to render a meaningful decision for ei-

---

7. The plaintiffs contend that the Secretary's approval of these grant applications was improper, even under the restrictive review standards of "plainly inconsistent" and "plainly inappropriate" set forth in 42 U.S.C. § 5304(c)(1) and (2).

8. 42 U.S.C. § 5306(e).

9. 24 C.F.R. § 570.107(a).

10. This phrase sets forth the priority which the Secretary is to follow when (and if) she reallocates such funds.

11. Thus, this situation is unlike that in *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), where the Supreme Court found the plaintiff's interests to be amply protected by the Back Pay Act, 5 U.S.C. § 5596.

12. The statute permits projects certified as being of "particular urgency" to be approved even though they may not serve low and moderate income persons "principally" enough to otherwise qualify for the block grant program. 42 U.S.C. § 5304(b)(2).

13. Similar issues were recently before the Court of Appeals for this circuit in *Evans v. Lynn,* No. 74–1793 (2d Cir. June 2, 1975) *rehearing en banc granted* August 11, 1975. The rehearing *en banc* is only as to the standing determinations made by the original panel. Judge Oakes, Gurfein, and Moore (the original panel) all acknowledged the difficulty presented by the merits of the issues.

ther party." Preliminary injunctive relief may be necessary, for example, to prevent one party from being able to moot out the other's claim by acting quickly. Viewing the situation presented here from this perspective, I find that the issuance of a preliminary injunction is necessary to insure that there will be something left to decide.

Accordingly, the defendants East Hartford, Enfield, Farmington, Glastonbury, Vernon, West Hartford, and Windsor Locks are preliminarily enjoined from drawing upon the Treasury, or spending in any fashion, the funds granted to them pursuant to Title I, the Community Development sections of the Housing and Community Development Act of 1974, 42 U.S.C. § 5301 et seq. This injunction shall remain in effect until further order of this court.

The plaintiff City of Hartford is a responsible party, and this order only grants injunctive relief pending my ruling on the merits, therefore no bond will be required.

So ordered.

## RULING ON DEFENDANTS' MOTIONS TO RECONSIDER AND TO AMEND PRELIMINARY INJUNCTION

### Standing to Sue

The defendants[1] have moved for reconsideration of this court's order of

September 30, 1975, which granted plaintiffs' request for preliminary injunctive relief in order to preserve the status quo pending a final decision. The essence of defendants' claim is that this court erred in issuing the injunction, because the City of Hartford lacks standing to bring this lawsuit. They urge two arguments in support of their motion. First, they argue that recently-published HUD regulations demonstrate that "Hartford has virtually no interest in reallocation funds and thus said funds cannot serve as a basis upon which to establish standing for the City of Hartford." Second, they point out that Hartford has no present interest in the funds in question, and that the Housing and Community Development Act of 1974[2] intended that these funds be used by communities for their own, not regional, needs. From this they argue that Hartford cannot meet either the "injury in fact" or the "zone of interests" requirements for standing to sue.

■ The defendants base their first argument on their interpretation of the HUD regulation found at 24 C.F.R. § 570.-409,[3] governing the reallocation of funds appropriated to implement the Housing and Community Development Act of 1974. Initially, they point out the stringent use requirements established in § 570.409(d), which requires that the reallocated funds be used only to meet

---

1. The defendants here are the Secretary and other officials of the Department of Housing and Urban Development, as well as the Department itself. Intervening defendants are the seven suburban communities whose grants are being challenged: East Hartford, Enfield, Farmington, Glastonbury, Vernon, West Hartford, and Windsor Locks.

2. 42 U.S.C. § 5301 et seq.

3. This regulation may be found in the September 12, 1975 issue of the Federal Register, at 42348. It reads in pertinent part:

"§ 570.409 Reallocated funds.

(a) *General.* This section governs the reallocation of funds as required by the provisions of § 570.107. In accordance with § 570.107(a) and (b), any amounts allocated to metropolitan cities, urban counties, or other units of general local government for basic grants of hold-harmless grants in met-

ropolitan areas or nonmetropolitan areas which are not applied for, or which are disapproved by the Secretary as part of the application review of program monitoring process, will be reallocated as set forth in subsection (f). As required by § 570.107(c), the following shall constitute the policies to be employed in the reallocation of funds appropriated for Fiscal Year 1975.

(b) *Timing of reallocation.* Any amounts appropriated for Fiscal Year 1975 which become available for reallocation as of August 15, 1975, will be reallocated no later than October 15, 1975.

. . . . .

(f) *Priorities for reallocation of funds.* (1) *Metropolitan areas.* Any amounts which become available for reallocation from appropriations for Fiscal Year 1975, will be reallocated in accordance with the following priorities: (i) to the same metropolitan area
. . . . ."

"urgent needs" as defined in the original regulations. Then they refer to Hartford's failure to file an application for such reallocated funds as might have been available for distribution on August 15, 1975, pursuant to § 570.409(b). Next, they state that four other Connecticut communities [4] did so apply, following the procedures set forth in § 570.409(e). Further, they claim that § 570.409 only applies to funds "available for reallocation as of August 15, 1975," citing § 570.409(b), and that therefore its provisions for priorities of distribution do not control the funds at issue in this case. Finally, they point out that, in the absence of an applicable regulation, the priorities which would govern the reallocation of such funds are those set forth in the statute, 42 U.S.C. § 5306(e). This provision requires that first consideration be given to metropolitan areas within the same state. Emphasizing that four other Connecticut communities have applied for reallocation funds available as of August 15, 1975, the defendants conclude that "Hartford has virtually no interest in the reallocation funds."

However, I construe the new regulation to apply to the funds at issue here, and thus it, not the statute, governs the priorities to these funds.[5] Section 570.409(a) provides, *inter alia,* that "the following shall constitute the policies to be employed in the reallocation of funds appropriated for Fiscal Year 1975." It was established at the hearing that all these funds are part of the Fiscal Year 1975 appropriations. The regulation further provides, at subsection (f)(1) that:

"Any amounts which become available for reallocation from appropriations for Fiscal Year 1975, will be reallocated in accordance with the following priorities: (i) to the same metropolitan area . . . ."

By its clear terms, therefore, this regulation governs what will happen to these funds, should they ultimately become available for reallocation. Section 570.409(b), "Timing of Reallocation," requires only that funds available by August 15, 1975 be reallocated by October 15, 1975. Because the "funds available for reallocation" which may result from this lawsuit would not become available until after August 15, they would be exempt from the necessity of reallocation by October 15, yet not from the priorities established by the regulation.

█ The defendants' second argument is equally without merit. If the plaintiffs prevail the funds at issue will become available for reallocation,[6] and the City of Hartford, along with the other 35 communities in the Hartford Standard Metropolitan Statistical Area,[7] will have first priority for their reallocation. None of these communities has yet applied for such funds. An affidavit by Nicholas R. Carbone, Majority Leader of the Hartford Court of Common Council, was submitted in response to defendants' motion. It indicates that Hartford hopes that the seven defendant towns will comply with the Act and obtain the

---

4. New Haven, West Haven, Danbury and Middletown.

5. Thus, I need not attempt to unravel the defendants' interweaving of what they admit to be both applicable and non-applicable segments of the regulation and statute. The regulation was issued pursuant to the authority granted in 42 U.S.C. § 5314, permitting the Secretary to carry out the provisions of the chapter "including the issuance of regulations." The priority established by 24 C.F.R. § 570.409(f)(1), preferring applications from the same metropolitan area, is consistent with the requirements of 42 U.S.C. § 5306(e), that first priority go to metropolitan areas in the same state. Thus, this regulation is "presumptively

valid," and there has been no attack, by any party, on that validity. *New York Foreign Frgt. F. & B. Ass'n v. Federal Maritime Comm'n,* 337 F.2d 289 (2d Cir. 1964), *cert. denied,* 380 U.S. 910, 85 S.Ct. 893, 13 L.Ed.2d 797 (1965).

6. That such funds will be reallocated, if they become available, is clear from 42 U.S.C. § 5306(e), stating that they "shall be reallocated."

7. The SMSA is the proper measure for what constitutes the "metropolitan area" in question. 42 U.S.C. § 5302(a)(3). Testimony at the hearing established that there are 36 communities within the Hartford SMSA.

moneys in dispute. It further indicates that, should the funds become available for reallocation, Hartford will apply for them, pursuant to the provisions of § 570.409. The Supreme Court has recently addressed the "injury in fact" aspect of standing, in a somewhat similar factual context. *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343, 43 U.S.L.W. 4906 (U.S.1975). In that case none of the plaintiffs were found to have suffered an "injury in fact," and thus all lacked standing to sue. However, that case involved constitutional, not statutory, claims. *See,* discussion below and *Evans v. Lynn,* (2d Cir. June 2, 1975), *rehearing en banc granted* August 11, 1975. Furthermore, none of the plaintiffs were able to demonstrate a sufficient nexus between the injury alleged and the relief sought. Here, by contrast, Hartford has certainly demonstrated that it is in a position to "benefit in a tangible way from the courts' intervention." *Warth v. Seldin,* 422 U.S. at 510, 95 S.Ct. at 2210, 43 U.S.L.W. at 4611. Thus, the City meets the "injury in fact" prerequisite for standing to sue.[8]

▬▬▬ The "zone of interest" aspect of standing is met here as well. As discussed above, Hartford may be able to obtain some of these funds, by virtue of the reallocation provisions in the statute and regulations.[9] If these funds were improperly allocated by HUD, because the towns' applications did not comport with statutory requirements, then Hartford should have an opportunity to apply for and use these funds on behalf of its own low and moderate income residents. This statutory right, to seek to participate in such a reallocation of funds, can be a basis for standing. Congress can create such legal right "even though no injury would exist without the statute,"

*Linda R. S. v. Richard D.,* 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973), provided there is an "indication that invasion of the statutory right had occurred or is likely to occur." *O'Shea v. Littleton,* 414 U.S. 488, 494 n. 2, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). The City of Hartford's claim that HUD's approval was contrary to law brings it "arguably within the zone of interests" protected by the statute. *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970).

### The Preliminary Injunction

The defendants also contend that this court improperly applied the Second Circuit standards governing the issuance of preliminary injunctions. Although this point was not raised on oral argument, I will deal with it briefly. The test set forth in *Checker Motors Corp. v. Chrysler Corp.,* 405 F.2d 319, 323 (2d Cir.) *cert. denied,* 394 U.S. 999, 89 S.Ct. 1595, 22 L. Ed.2d 777 (1969), has been used to affirm *grants* of preliminary injunctions in several cases in this circuit, among them *Gulf & Western Indus., Inc. v. Great Atlantic & Pacific Tea Co., Inc.,* 476 F.2d 687, 692–93 (2d Cir. 1973) and *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1347–48 (2d Cir. 1974). Indeed, in *Sonesta International Hotels Corp. v. Wellington Associates,* 483 F.2d 247 (2d Cir. 1973) these standards were followed in reversing the district court's denial of a preliminary injunction. This same test has been expressly approved as recently as last spring, in *ITT v. Vencap, Ltd.,* 519 F.2d 1001, 1019 n. 33 (2d Cir. 1975). Here the plaintiffs have raised serious and substantial questions concerning the compliance of these towns with the Housing

---

**8.** The defendants' argument that this is "bootstrapping" fails to understand the nature of a lawsuit, and thereby seeks to convert possession from nine to ten tenths of the law. It often happens that one party to a lawsuit will not have any present interest in funds unless s/he is successful. In a will contest, for example, the party seeking to contest the will has

no "interest" in the decedent's estate unless and until the will is invalidated. Similarly, Hartford will only have the opportunity to apply for the reallocated funds if their original allocation is found to have been improper.

**9.** *See,* 42 U.S.C. § 5306(e) and 24 C.F.R. § 570.409, discussed *supra* at 4.

Assistance Plan requirements of the Housing and Community Development Act of 1974, 42 U.S.C. § 5304(a)(4), as well as concerning HUD's compliance with the review standards set forth at 42 U.S.C. § 5304(c)(1)–(3). The resolution of these questions requires the review of a voluminous administrative record, as well as statutory construction involving issues of first impression. The plaintiffs have demonstrated irreparable injury, and a sufficiently sharp tip in the balance of hardships to warrant the issuance of a preliminary injunction. Citing Judge Waterman's opinion in *Checker Motors, supra,* once again, this preliminary injunction is necessary "to maintain the status quo pending a final determination of the merits." 405 F.2d at 323.[10]

### Injunction Bond

The defendants here also asked for reconsideration of this court's determination not to require the plaintiffs to post an injunction bond. This issue was not raised on oral argument either; the defendants rely on their cursory reference to Rule 65, and urge its apparently mandatory language upon this court.[11] In so doing, however, they forget that the rule in this circuit is that "the district court may dispense with security where there has been no proof of likelihood of harm to the party enjoined." *International Controls Corp., supra* at 1356, *citing Ferguson v. Tabah,* 288 F.2d 665, 675 (2d Cir. 1961). Here, as in *International Controls Corp., supra,* the defendants have requested a modification of the injunction, and their motion has been granted in part,[12] in order to protect them from serious harm pending a rul-

ing on the merits. The situation here is similar to that in *Grenchik v. Mandel,* 373 F.Supp. 1298, 1302 (D.Md.1973), where the court issued a preliminary injunction without requiring security because the plaintiffs stated that there would be no harm from the brief delay contemplated by the court.

That decision also relied on the need for the injunction, in order to preserve the court's jurisdiction over the subject matter of the lawsuit. Here the defendants' refusal to refrain from spending the funds at issue during the interlude between trial and decision has similarly necessitated the issuance of an injunction.

In this circuit, under *Ferguson* and *International Controls Corp.,* both *supra,* the district court may dispense with security where no harm has been shown by the party to be enjoined, as part of the "wide latitude of discretion" vested in the district court by Rule 65. None of the defendants here have demonstrated that they will be harmed by this injunction pending a decision. Therefore, I choose to follow the reasoning expressed in these cases, and order that no bond will be required from the City of Hartford.

### Modification of the Injunction

In addition to the above motions, two of the seven defendant towns, Enfield and Windsor Locks, have applied for partial modification of the preliminary injunction. That order enjoined them, along with the other defendants, "from drawing upon the Treasury, or spending in any fashion, the funds granted to them pursuant to Title I, the

---

**10.** *See also, International Controls Corp., supra,* at 1347, stating "a preliminary injunction is properly granted to preserve the status quo *pendente lite* where the balance of hardships tips decidedly toward the party requesting the temporary relief and that party has raised questions going to the merits so serious, substantial, and difficult as to make them a fair ground for litigation and thus for more deliberate investigation." That is the situation in this case.

**11.** Rule 65 reads, in pertinent part:

"No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, *in such sum as the court deems proper* . . . ." (Emphasis added.)

**12.** As set forth below.

Community Development sections of the Housing and Community Development Act of 1974 . . . until further order of this court."

The Town of Windsor Locks has requested that $175,000 of its $710,000 grant be released, in order to permit the completion of site improvements connected with 60 units of federally subsidized housing for the elderly. Affidavits submitted for the hearing established that construction of these units will be completed within two weeks, but that they cannot be occupied until the associated site improvements are finished. Some of the work has been completed but not paid for, and approximately four weeks of work remains. This work must be finished before the weather changes if occupancy is to occur before the spring of 1976.

The Town of Enfield has requested that $489,150 of its $1,223,000 grant be released. Five different uses are involved in this request:

(1) $48,150 for staff salaries;
(2) $2,000 for office furniture;
(3) $178,000 for a development in the Pleasant-Whitworth neighborhood;
(4) $161,000 for site acquisition for elderly housing;
(5) $100,000 for housing rehabilitation work.

Testimony at the hearing established that the administrative staff has responsibility for preparing second year applications under Title I of the Act, as well as the town's grant proposal involving 75 units of low and moderate income housing under the Section 8 programs of the Act.[13] The staff has been paid from other Town funds since September 30, 1975, but that authority expired October 17, 1975, leaving four workers facing layoffs and four more facing salary cuts. The office furniture involved is for the use of that staff and has already been delivered. However, the supplier has not yet been paid. The other moneys involve site acquisition, clearance, and rehabilitation activities of a less urgent nature.

The plaintiffs objected only to the release of the $439,000 to Enfield for the last three projects. That portion of the defendants' motion to reconsider will be denied. However, I will grant the defendants' request to amend my order of September 30, 1975 with respect to:

(1) The $175,000 for site improvements associated with the Windsor Locks elderly housing project;

(2) The $48,150 for salary payments to the Enfield administrative staff working on the Housing and Community Development Act grant applications;

(3) The $2,000 for the office furniture already purchased and received by Enfield.

As to the foregoing three items, the order of September 30, 1975 shall be modified to permit the release of funds in those amounts and for those purposes. The injunction shall remain in effect as to the remainder of the funds in issue.

As stated in open court on October 17, 1975, it is

So ordered.

---

**13.** Now found at 42 U.S.C. § 1437f.