COMMITTEE FOR FULL EMPLOYMENT By James Tarlau, Trustee Ad Litem and James Carr, individually and on behalf of all others similarly situated

v.

Carla A. HILLS, Secretary of the United States Department of Housing and Urban Development, and United States Department of Housing and Urban Development.

Civ. A. No. 76–210.

United States District Court, E. D. Pennsylvania.

March 15, 1976.

**15.** Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification, p. 9.

Community Legal Services, Inc. by Harold R. Berk, George D. Gould, Carolyn L. Daffron, David A. Searles, Philadelphia, Pa., for plaintiffs.

Robert E. J. Curran, U. S. Atty. by Paul E. Holl, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

CAHN, District Judge.

The plaintiffs [1] in this case are Committee for Full Employment by James Tarlau, Trustee Ad Litem, and James Carr, individually and on behalf of other persons who are unemployed and face mortgage foreclosure actions. The defendants are United States Department of Housing and Urban Development and its Secretary, Carla A. Hills. (Both of these federal defendants will be referred to hereinafter as "HUD".)

Plaintiffs, who request declaratory and injunctive relief on behalf of themselves and a nationwide class, contend that HUD has violated mandatory Congressional directives set forth in the Emergency Homeowners' Relief Act, 12 U.S.C. § 2701 et seq. ("EHRA"). According to plaintiffs, EHRA requires HUD to make reports to Congress on mortgage delinquency and foreclosure rates broken down on a regional basis, to submit to Congress evaluations pertaining to said reports and to alleviate distress caused by foreclosures by implementing certain programs authorized by the Act. Pursuant to Fed.R.Civ.P. 65(a)(2) and with the concurrence of the parties, the hearing on the preliminary injunction sought by the plaintiffs was ·consolidated with a hearing

on the merits. Therefore, I will proceed to determine whether a mandatory permanent injunction should be entered against the defendants and this opinion will constitute findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52(a).

An outline of the provisions of EHRA is required for an understanding of the issues in dispute. EHRA was adopted July 2, 1975. Section 102 (12 U.S.C. § 2701), after setting forth the Congressional finding that the Nation is experiencing a severe recession with large numbers of unemployed workers, states:

> "(b) It is the purpose of this chapter to provide a standby authority which will prevent widespread mortgage foreclosures and distress sales of homes resulting from the temporary loss of employment and income through a program of emergency loans and advances and emergency mortgage relief payments to homeowners to defray mortgage expenses."

EHRA requires HUD to take action designed to encourage forbearance by residential mortgage lenders as an alternative to their foreclosing on delinquent mortgages. HUD is also given standby authority to alleviate the emergency by making mortgage relief loans, providing insured credit or making direct mortgage relief payments to mortgagees on behalf of unemployed or underemployed mortgagors.[2] EHRA provides that the aggregate amount of mortgage relief loans and insured advances shall not exceed $1,500,000,000 at any one time and appropriates the sum of $500,000,000 for the purpose of making direct mortgage relief payments to residential mortgagees.

Although HUD is given discretionary standby authorization to implement EHRA by providing financial assistance, Congress required in § 111 (12 U.S.C. § 2710) that certain reports be made to it. Section 111 provides as follows:

---

1. A named plaintiff, Operation People United to Save Humanity, Philadelphia Chapter by James S. Hall, Trustee Ad Litem, was dismissed with prejudice as a party to this action upon Stipulation of Counsel and Order of Court dated February 26, 1976.

2. All advances by HUD of funds or insured credit are repayable by the mortgagor under § 104(d) of the act (12 U.S.C. § 2703(d)).

"Within sixty days after July 2, 1975 and within each sixty-day period thereafter prior to July 1, 1976, the Secretary shall make a report to the Congress on (1) the current rate of delinquencies and foreclosures in the housing market areas of the country which should be of immediate concern if the purposes of this chapter is [sic] to be achieved; (2) the extent of, and prospect for continuance of, voluntary forebearance by mortgagees in such housing market areas; (3) actions being taken by governmental agencies to encourage forebearance by mortgagees in such housing market areas; (4) actions taken and actions likely to be taken with respect to making assistance under this chapter available to alleviate hardships resulting from any serious rates of delinquencies and foreclosures; and (5) the current default status and projected default trends with respect to mortgages covering multifamily properties with special attention to mortgages insured under the various provisions of the National Housing Act and with recommendations on how such defaults and prospective defaults may be cured or avoided in a manner which, while giving weight to the financial interests of the United States, takes into full consideration the urgent needs of the many low- and moderate-income families that currently occupy such multifamily properties."

Plaintiffs seek, in addition to a declaration of their rights, permanent injunctive relief requiring HUD to submit data to Congress pursuant to subparagraph (1) of § 111 on the rate of delinquencies and foreclosures, not on a national basis as HUD did and is doing, but on a regional basis for each housing market area of the nation. The plaintiffs then seek to have this court require HUD to evaluate such data on a regional basis and to implement the standby authority of EHRA in those housing market areas of the nation found to be suffering from high rates of mortgage delinquencies and foreclosures.

■ The first line of defense raised by HUD in this action is that this court lacks jurisdiction over the subject matter of the dispute. Plaintiffs assert four separate grounds in support of their claim that this court has subject matter jurisdiction. Only one of these need be discussed since it does confer subject matter jurisdiction.[3] This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1361 which provides:

"The district courts shall have original jurisdiction in any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

There is no requirement under this section, as there is in 28 U.S.C. § 1331(a), of a minimum jurisdictional amount. HUD contends that subject matter jurisdiction is lacking because the duties which it allegedly failed to perform were discretionary. However, plaintiffs have pleaded that these duties were ministerial and nondiscretionary. Therefore, the following language in *Mattern v. Weinberger*, 519 F.2d 150 (3d Cir. 1975) is controlling:

"[I]f mandamus jurisdiction were unavailable because, prior to ruling on the merits, the Secretary's duty is not clear, then a court would never have jurisdic-

**3.** The other three bases for subject matter jurisdiction asserted by the plaintiffs are 5 U.S.C. § 701 *et seq.* (the Administrative Procedure Act), 28 U.S.C. § 1331(a) (Federal Question Jurisdiction) and 28 U.S.C. § 1337 (*proceeding arising under statute regulating commerce*). The Administrative Procedure Act is not an independent basis for jurisdiction in this circuit. *Zimmerman v. United States,* 422 F.2d 326, 330–331 (3d Cir. 1970), *cert. denied,* 399 U.S. 911, 92 S.Ct. 2200, 26 L.Ed.2d 565 (1970). Federal question jurisdiction is lacking because there is no proof that any plaintiff has estab- lished an amount in controversy in excess of $10,000 and *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), prevents aggregation of claims on behalf of a class for the purpose of meeting the minimum jurisdictional amount. However, it is at least arguable that under 28 U.S.C. § 1337 subject matter jurisdiction is present on the ground that this is a "proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." *See also Davis v. Romney,* 490 F.2d 1360 (3d Cir. 1974).

tion to determine whether his duty was clear in the first place."

Therefore, this court has jurisdiction under 28 U.S.C. § 1361 to determine whether or not the action of mandamus will lie against HUD.

HUD's next defense is that the plaintiffs lack standing to bring this action. According to HUD's view, plaintiffs allege violation of § 111 requiring reports to Congress, and if, in fact, there is such a violation, Congress would be the sole party with standing to seek redress from the judicial branch for the violation. HUD relies primarily on *National Association of Government Employees, Inc. v. Schlesinger*, 397 F.Supp. 894 (E.D.Pa.1975); *aff'd*, 523 F.2d 1051 (3d Cir. 1975). In that case the plaintiffs, consisting of seven local Congressmen, eleven employees of the Frankford Arsenal and certain unions, brought suit against the Secretary of the Army to forestall the proposed closing of the Frankford Arsenal because of the alleged failure of the defendants to give Congress a full report as required by § 613 of the Military Construction Authorization Act of 1967, 10 U.S.C. § 2662. In a per curiam opinion, filed October 14, 1975, No. 75–1883, the Third Circuit Court of Appeals stated:

> "When, as in this case, the Secretary of Defense, attempts and purports to comply with this mandate, it is for Congress to determine whether the report is 'full' enough, in the sense of being sufficient for its guidance. We view that determination as essentially a political question. *Cf. Coleman v. Miller*, 1939, 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385. There are no satisfactory criteria for its determination in a judicial forum. In any event, we will not undertake to rule upon the sufficiency of a report to Congress where Congress itself has received the report and has not asked for more."

The plaintiffs urge that this language does not control the outcome of the case *sub judice* because § 111 contains much more specific instructions to HUD than the ambiguous phrase "full report". Plaintiffs then point to the sentence in the *National*

*Association of Government Employees, Inc.* case which states that the legislation there under consideration set forth "no satisfactory criteria for its determination in a judicial forum." Plaintiffs argue that the instructions in § 111(1) of EHRA provide satisfactory and definite criteria to make a determination that HUD is in violation of the legislative directive. But that argument overlooks the next sentence of the per curiam opinion which unequivocally sets forth the law in this circuit that the judicial branch "in any event . . . will not undertake to rule upon the sufficiency of a report to Congress where Congress itself has received the report and has not asked for more."

Plaintiffs emphasize that two Congressmen have written to HUD requesting that the reports to Congress contain data on delinquency and foreclosure rates in specific housing market areas instead of on a national basis. The Congressmen are Representative Thomas Ashley, who sponsored EHRA, and Representative Henry S. Reuss, Chairman of the Committee on Banking, Currency and Housing. There are two difficulties with plaintiffs' argument on this point. First, HUD replied to Congressman Reuss's inquiry in considerable detail. Thereafter Congressman Reuss replied as follows:

> "I know that you are as concerned as I am about the impact of high unemployment on the ability of families to keep their homes. Therefore, in addition to your national index, I urge you to use all available information to keep a close watch on the recession's effect on home ownership regionally and locally."

This reply by Congressman Reuss does not seek or request additional information to be placed in the reports to Congress required by § 111. Second, neither Congressman Ashley nor Congressman Reuss are parties plaintiff to this litigation, and even if they were, it would not change the decision unless they were acting as authorized representatives for the Congress. As stated by Judge Newcomer in *National Association of Government Employees, Inc.*, supra at 899:

"We do not, therefore, believe we could judge the report in question here inadequate under Section 613 because the seven Congressional plaintiffs here believe it so."

■ The Constitution established a delicate balance between the three branches of government. This balance was recently put to a severe stress test in the litigation involving the Watergate scandals. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *In re Subpoena to Nixon,* 360 F.Supp. 1 (D.D.C.1973), *modified, Nixon v. Sirica,* 159 U.S.App.D.C. 58, 487 F.2d 700 (1973). The rule enunciated in *National Association of Government Employees, Inc., supra,* by the Third Circuit Court of Appeals is bottomed on the very practical consideration that individual citizens have no standing to initiate litigation where the predominant dispute involves a conflict between the legislative and executive branches. This concept is especially applicable where the rights of the individual citizens are derived solely from an alleged violation of a duty owed by one branch of the government to another. Here, it is clearly discretionary with HUD whether to provide financial assistance as authorized by EHRA. Plaintiffs seek to eliminate HUD's discretion by raising an issue which relates solely to the relationship between Congress and HUD. Without the issue of whether the reports submitted by HUD to Congress complied with § 111, plaintiffs' mandamus action must fail (even though plaintiffs' interests would be adversely affected by failure of HUD to implement EHRA) because of the clear grant of discretionary "standby authority" given by Congress to HUD in § 102(b). Therefore, since plaintiffs have no standing to raise the issue of whether the reports submitted by HUD to Congress comply with § 111, judgment must be entered for the defendants.

Plaintiffs' reliance on the case of *City of Hartford et al. v. Hills et al.,* 408 F.Supp. 879 (D.Conn.1975) is misplaced. That case actually reinforces defendants' argument that *National Association of Government Employees, Inc., supra,* controls the outcome of the within litigation. *City of Hartford* involved the culmination of a confrontation between the City of Hartford and seven suburban towns. The confrontation involved HUD approval of Federal Community Development Grants to the suburban towns. The City of Hartford claimed that HUD approval was illegal in that the approval of the funds for the suburban towns violated statutory review standards mandated by Congress. The court agreed with the City of Hartford and enjoined the seven defendant suburban towns from drawing upon the Treasury or spending the funds which HUD approved for certain projects. The dispute in the *City of Hartford* case has nothing at all to do with reports which HUD is required to make to Congress. The dispute in that case was over which municipalities were to receive HUD funds for community development. There the Congressional directive was set forth in the Act, not for the benefit of Congress, but to establish a policy for HUD to follow in allocating the funding for local community projects. The two cases are clearly distinguishable because in the case at bar the Congressional directives were inserted in the legislation for the purpose of keeping Congress informed and not to benefit the class of plaintiffs.

In the within case, while an argument can be made that § 111 of EHRA requires HUD to report to the Congress on delinquency and foreclosure rates on a regional or local basis, Congress has taken no formal action directing the Secretary to provide such a breakdown. Furthermore, the Secretary has made four reports to Congress which fully explain the difficulties which she encountered in determining whether regional and local rates of delinquencies should be set forth. The reports to Congress contain an analysis of whether a separate statistical study should be initiated at government expense to develop regional and local data on delinquency and foreclosure rates. In any event, the legislative scheme clearly contemplates that HUD is to emphasize and encourage voluntary forbearance on the part of mortgage lenders to

avoid the hardships which Congress envisioned. The reports to Congress state that the forbearance concept has been successful and that implementation of the Act through mortgage relief loans, advances of insured credit and direct relief payments would be counterproductive because such implementation would stimulate mortgage lenders to initiate foreclosure proceedings in order to obtain the payments authorized by EHRA.

I conclude, therefore, that plaintiffs lack standing to bring this litigation, and, therefore, judgment will be entered in favor of the defendants.