UNITED STATES of America, Plaintiff,

v.

Carlos AMESQUITA–PADILLA, and Juan Manuel Munoz–Marquez, Defendants.

No. CR87–264R.

United States District Court, W.D. Washington, at Seattle.

April 20, 1988.

Jerry Diskin, Asst. U.S. Atty., Seattle, Wash., for plaintiff.

Michael Martin, Asst. Federal Public Defender, Seattle, Wash., for defendants.

## ORDER DENYING MOTION TO PRE-CLUDE USE OF SENTENCING GUIDELINES

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on defendants' motion to preclude use of the Federal Sentencing Guidelines on the grounds that the 1984 Sentencing Reform

Act violates the doctrine of separation of powers and is an unconstitutional delegation of Congress' legislative authority. The National Association of Criminal Defense Lawyers, appearing as amicus curiae, echoes defendants' constitutional arguments, and also challenges the Guidelines on statutory grounds. Having reviewed the motion, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

# I

## FACTUAL BACKGROUND

Carlos Amesquita–Padilla and Juan Manuel Munoz–Marquez ("defendants") were arrested on November 18, 1987. An Indictment, dated December 2, 1987, charged the defendants with distributing over five hundred (500) grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Defendants originally pleaded not guilty, but later reached a plea agreement with the Government, and the court accepted defendants' pleas of guilty to the crime charged. Minute Entry (Feb. 5, 1987).

Because defendants' criminal conduct occurred after November 1, 1987, the court must impose sentence in accordance with the sentencing guidelines ("Guidelines") promulgated by the United States Sentencing Commission ("Commission") pursuant to the Sentencing Reform Act of 1984 ("Sentencing Act"), 28 U.S.C. §§ 991–98 (Supp. III 1985).[1] Defendants move, however, to preclude use of the Guidelines, arguing that the Sentencing Act is unconstitutional. Amicus curiae National Association of Criminal Defense Lawyers ("NACDL") joins defendants in arguing the unconstitutionality of the Sentencing Act, but also contends that the Guidelines themselves must be invalidated because they are inconsistent with Sentencing Act provisions and legislative history.

# II

## STATUTORY FRAMEWORK

Congress created the Commission as "an independent commission in the judicial branch of the United States. . . ." 28 U.S.C. § 991(a) (Supp. III 1985).[2] It is a permanent body with seven voting members chosen by the President with the consent of the Senate, and two nonvoting, *ex officio* members, the Attorney General or his/her designee and the Chairman of the United States Parole Commission.[3] Commissioners are appointed for a fixed, six-year term and may be removed by the President for "neglect of duty or malfeasance in office or for good cause shown." 28 U.S.C. §§ 991(a) and 992(a). At least three of the seven voting members must be federal judges, one of whom serves as Chairperson, and all of whom must be selected from a list of six judges recommended to the President by the Judicial Conference of the United States. *Id.* The judicial members do not have to resign as federal judges while serving on the Commission and they are excused from their responsibility to reside in their judicial districts. 28 U.S.C. § 992(c)–(d).

The Commission's primary function is to develop determinate sentencing guidelines for every federal offense to be used by federal courts in imposing sentences. 28 U.S.C. § 991(b). Sentencing policies and practices developed by the Commission must "provide certainty and fairness" and avoid "unwarranted sentencing disparities among defendants with similar records." 28 U.S.C. § 991(b)(1)(B). In establishing these Guidelines, the Commission must consider a variety of factors and circumstances inhering in the criminal offense and the defendant's criminal history. 28 U.S.C. § 994.

---

1. The Sentencing Act was contained in Title II of the Comprehensive Crime Control Act of 1984. Pub.L. 98–473, 98 Stat 2017. The Guidelines became effective on November 1, 1987. Sentencing Act of 1987, 101 Stat. 1266 (1987).

2. Unless otherwise indicated, all citations to 28 U.S.C. appear in Supp. III (1985).

3. Pub.L. No. 98–473, § 235(a)(5), 98 Stat. 2033 (1984). The Parole Commission continues to establish release dates for all defendants sentenced under prior sentencing practice but will be abolished five years after the effective date of the first Guidelines. *Id.* at § 235(b)(1).

Federal judges are bound by the Commission's Guidelines, and therefore, must "impose a sentence of the kind, and within the range set forth in the Guidelines." 18 U.S.C. § 3553(b) (Supp. III 1985). Sentences outside the Guidelines are permitted if "the court finds that an aggravating or mitigating circumstance exists that was not adequately taken into consideration by the [Commission] in formulating the guidelines and that should result in a sentence different from that described." *Id.* In addition, sentencing courts still have the authority to impose sentences below the statutory minimum to reward a defendant's cooperation. 18 U.S.C. § 3553(e) (Supp. III 1985).[4]

The Commission also has a number of ongoing responsibilities. Defendants may petition the Commission for modification of applicable guidelines, but only on the grounds of "changed circumstances unrelated to the defendant." 28 U.S.C. § 994(s).[5] The Commission will also promulgate policy statements for plea bargains,[6] and has continuing responsibility to review the guidelines regularly, along with significant research, reporting, and recommendatory functions.[7]

In accordance with its responsibilities, the Commission promulgated Guidelines and submitted them to Congress on April 1, 1987. Pursuant to the Act, the Guidelines became law unless Congress enacted, and the President signed, disapproving or modifying legislation within the statutory six-month waiting period. 28 U.S.C. § 994(p). Because Congress took no action, the Guidelines went into effect on November 1, 1987.

## III

## CONSTITUTIONAL ISSUES

The various parties to this action have raised a variety of constitutionally based challenges to the Sentencing Act. According to defendants and NACDL, the Sentencing Act constitutes an unconstitutional and excessive delegation of legislative authority. Defendants also contend that the Sentencing Act violates the separation of powers doctrine by requiring Article III judges to sit on the Commission and by vesting the President with the power to remove members of the Commission. NACDL supports defendants' separation of powers contentions and raises a separate due process challenge to the President's removal power. The Department of Justice ("the Department"), in its capacity as representative of the Executive Branch, raises separation of powers questions concerning the placement of the Commission in the Judicial Branch, the service of non-judge members on a Judicial Branch commission, and the President's removal power. According to the Department, however, the court can cure any potential separation of powers problems by recognizing that the Commission rightfully belongs in the Executive Branch. For the following reasons, the court rejects each of the above described constitutional challenges to the Commission and the Sentencing Act.

## A

### *Nondelegation Doctrine*

■ Defendants assert that Congress unconstitutionally delegated to the Commission the authority to establish sentences. Essentially defendants advance two contentions: (1) that the promulgation of sentencing guidelines constitutes such a core a legislative function that Congress cannot delegate its authority under any circumstances; and (2) that Congress failed

---

4. Both the government and the defendant may appeal a sentence outside the guidelines; sentences within the guidelines may also be appealed, but only if the sentencing court applies the guidelines incorrectly or in violation of the law. 18 U.S.C. § 3742(a)(1)-(3), (b) (1)-(3) (Supp. III 1985).

5. Changed circumstances include changes in community view of the offense's gravity, public concern generated by the offense, and the deterrent effect of particular sentences on others. 28 U.S.C. § 994(s)(1)-(3).

6. 28 U.S.C. § 994(a), (d)(2) (Supp. III 1985).

7. *See* 28 U.S.C. §§ 994 (m)–(u); 991(b)(2); 995(a)(8), (12)–(20); and § 997.

to provide a policy statement and a set of standards sufficient to guide the Commission's exercise of its responsibilities. A number of courts have considered these challenges to the Sentencing Act and appear to be unanimous in finding the delegation proper. The court joins in this conclusion and adopts the reasoning set forth in *U.S. v. Arnold,* 678 F.Supp. 1463, 1468–69 (S.D.Cal.1988) and *United States v. Ruiz–Villanueva,* 680 F.Supp. 1411, 1415–18 (S.D.Cal.1988).

## B

### *Separation of Powers Doctrine*

The framers of the Constitution intentionally sought to "divide the delegated powers ... into three defined categories, Legislative, Executive, and Judicial, and to assure, as nearly as possible, that each branch would confine itself to its assigned responsibility." *INS· v. Chada,* 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1982). Governmental action can offend the separation of powers doctrine in two ways: (1) when one branch expands its power beyond the functions set out in the Constitution, even if such expansion is authorized by another coordinate branch, *see, e.g., Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 3186, 92 L.Ed.2d 583 (1986) (Congress cannot maintain power to remove Comptroller General after assigning him executive duties under Gramm–Rudman–Hollings Act);[8] and (2) when the actions of one branch have the potential to prevent another branch from accomplishing its constitutionally assigned functions, and this "functional impairment" cannot be justified by an overriding need to promote objectives within the constitutional authority of the interfering branch. *Nixon v.*

*Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed. 2d 867 (1977); *Chada,* 462 U.S. at 963, 103 S.Ct. at 2790 (Powell, J., concurring in judgment). In analyzing the various separation of powers challenges, the court begins by presuming that the Sentencing Act and the Guidelines are constitutional. *Chada,* 462 U.S. at 944, 103 S.Ct. at 2780.

1. *Did Congress violate the separation of powers doctrine by placing the Commission in the Judicial Branch?*

█ The Department contends that Congress may have violated the separation of powers doctrine by placing in the Judicial Branch a commission that exercises executive power and functions. Similarly, defendants contend that placement in the Judicial Branch is unconstitutional because the Commission exercises legislative authority. The court finds these arguments unpersuasive.[9] Instead, the court agrees with the Commission's position that Congress may constitutionally create an independent body in the Judicial Branch and authorize it to perform rulemaking in aid of the judicial sentencing function: a function assigned to the judiciary by Congress, rather than by the Constitution.

Undeniably, Article III of the Constitution strictly limits judicial power to "interpreting and applying [laws] in cases properly brought before the courts," *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1973), and to adjudicating cases and controversies. *See, e.g., Muskrat v. United States,* 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed. 2d 479 (1980). The court agrees with de-

8. *See also Buckley v. Valeo,* 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976); *Chada,* 462 U.S. at 963, 103 S.Ct. at 2790 (Powell, J., concurring in judgment); *Muskrat v. United States,* 219 U.S. 346, 355, 31 S.Ct. 250, 253, 55 L.Ed. 246 (1911) (federal courts must "carefully abstain from exercising any power that is not strictly judicial in its character, and which is not clearly confided to [them] by the Constitution"). This "expansion of powers" test dates back to *Hayburn's Case,* 2 U.S. (1 Dall.) 409, 1 L.Ed. 436 (1792) (federal courts cannot be assigned the

task of recommending to the Secretary of War whether Revolutionary War veterans were owed pensions).

9. Because the court finds the Commission's placement constitutional, it need not address the Department's contention that any potential separation of powers problems can be cured by severing the placement language and recognizing the Commission as an independent agency housed in the Executive Branch.

fendants that the Sentencing Act creates a Judicial Branch entity imbued with legislative type functions outside the case and controversy context. *See Keller v. Potomac Electric Co.*, 261 U.S. 428, 440–41, 43 S.Ct. 445, 447–48, 67 L.Ed. 731 (1922) (unlike judicial inquiry, legislation looks to the future and changes existing conditions through new rules). Moreover, in requiring the Commission to implement the sentencing policy considerations contained in the Sentencing Act, Congress has also assigned to the Judicial Branch tasks recognized by the Supreme Court as the "very essence of 'execution' of the law." *Bowsher*, 106 S.Ct. at 3192 (invalidating portions of "Gramm–Rudman Act" because Congress retained removal power over Comptroller General who had been given executive function of "interpreting a law enacted by Congress to implement the legislative mandate"). In the past, the Supreme Court has invalidated Congressional attempts to give Article III judges executive or administrative functions of a nonjudicial nature. *Buckley v. Valeo*, 424 U.S. 1, 123, 96 S.Ct. 612, 684, 46 L.Ed.2d 659 (1976) (citing *Hayburn's Case*, 2 U.S. (Dall.) 408, 1 L.Ed. 436 (1972) (statute vesting court of appeals with power to determine pension rights subject to revision by Secretary of War and Congress); *United States v. Ferrerira*, 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1852) (Congress cannot delegate to Article III courts the duty to adjust claims against United States arising out of Treaty of 1819 with Spain).

Unlike in *Hayburn's Case* and in *Ferrerira*, here Congress has not assigned nonjudicial executive and legislative functions to courts *qua* courts.[10] Rather, it has established "an independent commission in the judicial branch", 28 U.S.C. § 991(a), and given it the responsibility for structuring sentencing discretion delegated to individual judges by Congress. The court acknowledges that several Federal District Courts have relied on the *Bowsher* definition of executive functions to hold that placement

of the Commission in the Judicial Branch violates the separation of powers doctrine. *See, e.g., Arnold*, at 1469. In *Bowsher*, however, the Court was not deciding what constitutes an executive function performable *only* by the Executive Branch under all circumstances. Rather, it merely had to determine, as between Congress and the Executive Branch, the appropriate branch to control the execution of the law.

Even assuming *arguendo* that *Bowsher* stands for the broad proposition that implementing a statute is ordinarily an Executive Branch function, allocation of powers between the three branches "is not a matter of absolutes." *In re Sealed Case*, 838 F.2d 476, 504 (D.C.Cir.1988). The Constitution does not require "a hermetic sealing off of the three branches of Government from one another." *Buckley v. Valeo*, 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976); *Chada*, 462 U.S. at 951, 103 S.Ct. at 2784. Thus, it is well settled that Congress may delegate executive and legislative type responsibilities to the Judicial Branch if the assigned duties aid in the performance of the judicial function. *See, e.g., Sibbach v. Wilson & Co.*, 312 U.S. 1, 14, 61 S.Ct. 422, 426, 85 L.Ed. 479 (1941) (upholding delegation of authority to the Supreme Court to promulgate the Federal Rules of Civil Procedure); *Chandler v. Judicial Counsel of the Tenth Circuit*, 398 U.S. 74, 85, 90 S.Ct. 1648, 1654, 26 L.Ed.2d 100 (1970) (Congress can create Judicial Councils in each circuit for the purpose of providing for effective administration of the business of the courts). Most recently, the Eleventh Circuit recognized that "judges are not limited to just bench-sitting, and do not violate separation of powers principles when they participate in ancillary court management tasks." *In re Certain Complaints Under Investigation*, 783 F.2d 1488, 1503–06 (11th Cir.1986) (relying on *Chandler* to uphold Congress' decision to confer investigatory powers, including subpoena power, upon the Judicial

---

**10.** *See In re President's Commission of Organized Crime Subpoena of Nicodemo Scarfo ("Scarfo")*, 783 F.2d 370, 375 (3rd.Cir.1986) (concluding that *Ferreira*, "stands for the proposition that Congress may impose some extrajudicial duties on Article III judges individually—duties that may not be imposed on the courts *qua* courts").

Councils to investigate complaints of judicial misconduct).

Like several other federal district courts that have upheld the Sentencing Act's constitutionality, the court feels it appropriate to grant a measure of deference to Congress' characterization of the Commission's function, and view that characterization as the foundation for Congress' decision to place the Commission in the Judicial Branch. *See, e.g., Ruiz–Villanueva,* 680 F.Supp. 1419. The legislative history of the Sentencing Act clearly establishes that Congress viewed sentencing as a judicial function and placed the Commission in the Judicial Branch to ensure that "sentencing should remain primarily a judicial function." Sen.Rep. No. 225, 98th Cong., 1st Sess. 159 (1983) ("Senate Report" or "Sen. Rep."), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3342 ("USCCAN").[11] Sentencing is not inherently or exclusively a part of the judiciary's adjudicative function. *Geraghty v. United States Parole Comm'n,* 719 F.2d 1199, 1211 (3d Cir.1983). Rather, the power to impose a particular sentence flows from Congress, which has the authority to define and fix the punishment for federal crimes. *Ex Parte United States,* 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). Because Congress can set the exact punishment itself or delegate sentencing discretion to individual judges, the court can find no reason why Congress cannot create an independent agency in the Judicial Branch to structure that discretion through rulemaking. In the court's view, that is exactly what Congress has accomplished by directing the Commission "to synthesize congressionally mandated sentencing policy into a format which would assist judges in imposing fair and uniform sentences." *Ruiz–Villanueva,* 680 F.Supp. 1421.

The court has considered the Department's position that the promulgation of sentencing guidelines and the Commission's various other functions do not "aid the judicial function" as that term has been applied by the courts. Defendants also argue that the Guidelines cannot be characterized as merely in aid of the judicial function because they directly impact substantive rights of individuals convicted of federal crimes. Obviously the Commission's duties are not directly analogous to the other nonadjudicatory functions approved by the Supreme Court as in aid of the judicial function. Nevertheless, Congress has "undoubted power to regulate the practice and procedure of federal courts." *Sibbach,* 312 U.S. at 9, 61 S.Ct. at 424. Here, having delegated to individual judges the task of imposing sentence within certain parameters, and having concluded that the unrestrained exercise of that discretion lead to wide disparities, Congress sought to establish a Commission to regulate the exercise of sentencing discretion. Because Congress itself has the power to regulate sentencing discretion, it may exercise that power by delegating it to the Judicial Branch. *See id.*

Although the question of procedural versus substantive rulemaking arose in *Sibbach,* the distinction was at issue because of the wording of the Rules Enabling Act and questions of federalism, not because the Court perceived separation of powers problems. *See Sibbach,* 312 U.S. at 10, 61 S.Ct. at 424; *see also Ruiz–Villanueva,* 680 F.Supp. 1422 (citing Burbank, *The Rules Enabling of 1934,* 130 U.Pa.L.Rev. 1015, 1028 (1982)). If the substantive/procedural distinction supplies a test for separation of powers purposes, prior sentencing law would violate the separation doctrine— defendants' substantive liberty rights are no more affected by the Guidelines than by the unfettered exercise of individual judges' discretion that characterized sentencing under prior procedure. The court perceives the Commission's authority and Guidelines as primarily addressed to the procedural task of structuring individual judges' exercise of discretion, and as having only an indirect effect on substantive rights. *See Ruiz–Villanueva,* 680 F.Supp. at 1422.[12] To the extent that there is sub-

---

**11.** *See also* Sen.Rep. at 54 ("sentencing should be within the province of the judiciary").

**12.** Defendants cite *Miller v. Florida,* 482 U.S. ——, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), and argue that the Supreme Court would view the

stantive effect, the responsibility belongs to Congress, not the Commission, because Congress has the final word as to whether the Guidelines become law.

The court concludes that the Commission is properly placed in the Judicial Branch because, through rulemaking and its other functions, the Commission regulates "the judicial process for enforcing rights and duties recognized by substantive law and for *justly administering remedy and redress." Sibbach,* 312 U.S. at 14, 61 S.Ct. at 426 (emphasis added).

Defendants and the Department argue further, however, that placement in the Judicial Branch may also be constitutionally impermissible because of the presence of nonjudge members on a Judicial Branch commission. The court disagrees. The challenge to the presence of nonjudge members is grounded in *Northern Pipeline Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). There, a plurality of the Court invalidated a portion of the Bankruptcy Act, finding it constitutionally impermissible to assign nonArticle III Bankruptcy judges the judicial power to adjudicate state common law actions. As the Commission argues, *Northern Pipeline* is inapplicable in this context. Here, the nonjudge members of the Commission do not exercise the judicial power; they have only been assigned legislative and executive tasks in aid of the judicial function.

The court concludes that Congress assigned the Commission the responsibility of developing guidelines to structure the discretion of individual judges in the exercise of the sentencing function delegated to them by Congress. Because the Commission's responsibilities aid judges in the performance of their judicial function, the court finds no constitutional infirmity in Congress' decision to establish the Commission as an independent agency in the Judicial Branch. *See Sibbach, supra; Chandler, supra.*

2. *Has Congress violated the separation of powers doctrine by requiring Article III judges to serve on the Commission?*

■ Defendants and NACDL contend that requiring Article III judges to serve on the Commission unconstitutionally expands the Judicial Branch's power, and impermissibly impairs the ability of the individual judge-Commissioners, along with the Judicial Branch as a whole, to perform the judiciary's constitutionally mandated function. *Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1976). Defendants predicate their "unconstitutional expansion of powers" argument on a characterization of the Commission's function as simply legislative. Because the court has found that the Commission's authority aids the performance of the judicial function, the court concludes that defendants' expansion of powers argument is without merit.

Defendants base their "functional impairment" argument on the contention that mandatory judicial service on the Commission impairs the neutrality, impartiality, and independence of the Judicial Branch and individual judges. Article III, § 1 does require that judges, and the Judicial Branch as an institution, remain independent and impartial. *Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 3256, 92 L.Ed.2d 675. In support of their argument, defendants cite the reasoning employed by the Eleventh Circuit and the Third Circuit in decisions (which reached opposite conclusions) concerning the constitutionality of judges serving among the nineteen members appointed to the President's Commission on Orga-

---

Federal Guidelines as having substantive, rather than merely procedural effect. In *Miller,* however, the Court was concerned with whether a change in the presumptive sentencing range under Florida's guidelines was "substantive" for the purposes of the Ex Post Facto Clause. Nothing in *Miller* indicates that the Court views the procedural/substantive line as the point at which judicially promulgated rules no longer can be permitted as in aid of the judicial function. Moreover, the court views the Guidelines as establishing "a method to be followed in determining the appropriate sentence," which makes the Guidelines more procedural than substantive. *See Miller,* 107 S.Ct. at 2453.

nized Crime ("Crime Commission"). *See Scarfo*, 783 F.2d at 375; *In re Application of the President's Commission on Organized Crime, Subpoena of Lorenzo Scaduto*, 763 F.2d 1191 (11th Cir.1985) ("*Scaduto*").

Defendants' "functional impairment" argument is unpersuasive given this court's finding that the Commission exercises authority in aid of the judicial function. Constitutional concerns expressed in *Scaduto* and *Scarfo* do not arise here because of the nature of the Sentencing Commission's authority. The Crime Commission was assigned to investigate organized crime and charged with writing a report that would assist and improve law enforcement efforts, tasks that aid the prosecutorial function. In finding that it was unconstitutional for judges to serve on the Crime Commission, a divided Eleventh Circuit panel focused on the prosecutorial nature of the subject matter and assigned tasks, and concluded that judicial service endangered the impartiality of the individual judge-Commissioners and created an appearance of bias. *Scaduto*, 763 F.2d at 1197–98. In a unanimous decision in *Scarfo*, the Third Circuit rejected *Scaduto*, concluding that any potential problems concerning impartiality and appearance of fairness could be addressed in specific cases by a motion for recusal. 783 F.2d at 374–81. Nevertheless, the *Scarfo* decision suggests that the Third Circuit might have reached an opposite conclusion had judicial service on the Crime Commission been mandatory, that is, where either the Congress or the Executive mandate the presence of judges. *Scarfo*, 783 F.2d at 378.

Service on the Sentencing Commission would not impair judicial neutrality because judge-Commissioners will not be exposed to highly prejudicial information, nor will they be required to "adopt a progovernment perspective which is illsuited to [a judge's] obligation to be neutral in the courtroom", considerations that led to the Eleventh Circuit's decision in *Scaduto*. 763 F.2d at 1197–98. Although judicial service is mandatory, the Commission is lodged in the Judicial Branch and exercises authority in furtherance of the judicial function. Con-

sequently, judicial independence is not in danger from a congressional mandate of judicial service on an Executive Branch commission, which was of concern to the Third Circuit. *Scarfo*, 783 F.2d at 376. Unlike service on the Crime Commission, service on the Sentencing Commission will not entangle judges in the Executive Branch's agenda.

As to defendants' specific examples of how judicial service would impair the functioning of the judiciary, the court is unpersuaded. If judge-Commissioners will not be able to act as impartial adjudicators in certain cases, the *Scarfo* reasoning is persuasive—recusal motions will solve any potential problems. Contrary to defendants' second contention, the need for recusal in certain instances "does not ... rise to the stature of an obstacle impeding the courts' ability to discharge their Article III obligations." *Scarfo*, 783 F.2d at 381. Finally, the court dismisses defendants' argument that the service of judge-Commissioners makes it unlikely that other judges will fairly evaluate challenges to the Guidelines or their interpretation. As one district court stated in rejecting this argument,

> [t]he most charitable response to this argument is that it is patently meritless. It is no secret that judges disagree with each other constantly ... and federal judges are unlikely to be impressed, or even minimally affected, by the fact that other judges serve on the Sentencing Commission.

*United States v. Chambless*, 680 F.Supp. 793, 800 (E.D.La.1988).

Because the role of judge-Commissioners is to assist in the judicial sentencing function, the court concludes that the Sentencing Act does not impermissibly impair the functioning of the Judicial Branch. Consequently, the court finds that judicial independence and impartiality suffer no qualitative impairment. To the extent that judge-Commissioners will not be able to discharge their individual Article III duties, the court finds that this slight quantitative impairment is "not a sufficient intrusion upon the judiciary as a whole to warrant finding a functional impairment." *Ruiz–*

*Villanueva,* 680 F.Supp. at 1423; *but see Arnold,* at 1470–71.

3. *Does vesting the removal power in the President violate the separation of powers doctrine?*

■ Prior to the Sentencing Act, federal sentencing was characterized by a "three way sharing of responsibility" between the branches. *Geraghty,* 719 F.2d at 1211. Congress defined criminal conduct and set maximum, and sometimes minimum penalties; individual judges exercised discretion in imposing a sentence within the congressionally set limits; and the Executive Branch, through the Parole Commission, set the actual release date for defendants sentenced to prison. *See United States v. Grayson,* 438 U.S. 41, 45–47, 98 S.Ct. 2610, 2613–14, 57 L.Ed.2d 582 (1978); *Geraghty,* 719 F.2d at 1211. Under the Sentencing Act, Congress sought to continue this longstanding tradition of providing an active role for all three branches of the government in the exercise of the sentencing power. *Ruiz–Villanueva,* 680 F.Supp. at 1423. Consequently, Congress preserved the Executive's role in sentencing by vesting the President with the power to appoint and remove judge-Commissioners, and by having the Attorney General sit as an *ex officio* member. Defendants, the Department, and NACDL contend that various aspects of this arrangement violate the separation of powers doctrine. The court rejects each of these contentions in turn.

Defendants and the Department argue that the removal power unconstitutionally expands the President's authority, citing *Bowsher* in support. There, the Supreme Court concluded that Congress violated the separation of powers doctrine by retaining removal power over an officer (the Comptroller General) charged with exercising executive functions. *Bowsher,* 106 S.Ct. at 3189–92. Any attempt to analogize the Sentencing Act arrangement to *Bowsher* is defective. The Court characterized the Comptroller General's responsibilities as "plainly entailing execution of the law *in constitutional terms.*" *Id.* at 3192 (em-

phasis added). Because Congress retained the removal power, the Court concluded that in effect Congress had maintained control over a function assigned to the Executive Branch by the Constitution. Thus, congressional control over the execution of the laws was "constitutionally impermissible." *Bowsher,* 106 S.Ct. at 3189.

But in this case, the Sentencing Act does not grant the Commission judicial responsibilities "in constitutional terms." Rather, the Commission exercises its authority in aid of the judicial sentencing function, a function assigned to the courts by Congress, not the Constitution. Thus, the removal power does not place the President in control of the exercise of the adjudicatory power assigned to the judiciary by Article III. *See Ruiz–Villanueva,* 680 F.Supp. 1423 (holding that because the Commission does not perform an exclusively judicial function, *Bowsher* is distinguishable). Undoubtedly, in choosing to establish the Commission using the "independent agency model", Congress was aware that the Supreme Court has repeatedly held that limiting the executive to removal only for cause preserves the independence of agencies from improper interference. *Weiner v. United States,* 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958); *Humphrey's Executor,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935). In sum, the court concludes that the removal power does not impermissibly expand the President's authority.

Next, defendants and NACDL contend that the President's appointment and removal power, combined with the *ex officio* presence of the Attorney General, provides the Executive Branch with the potential to impair the independence and impartiality of judge-Commissioners in the performance of their constitutionally assigned functions. *See Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1976). For example, defendants contend the President's appointment and removal power provides the Executive Branch with the power to control the salary of federal district court judges chosen to serve as Commissioners.[13] In

---

**13.** If the President appoints a district judge to

the Commission, that judge will receive compen-

addition, defendants argue that the prospect of a public removal from the Commission for cause could be used as leverage by the Executive Branch against any judge-Commissioner.

The court finds that any threat to a judge-Commissioner's impartiality and independence inherent in the President's appointment and removal power is speculative at best, and not of constitutional proportions. First, no real control can be exerted by the appointment authority. *See Bowsher*, 106 S.Ct. at 3188 (the Court observed that rather than the appointment authority, it is the removal authority, that a governmental officer "must fear"). Moreover, the Sentencing Act limits the President's appointment power by requiring the selection to come from a list of six judges generated by the Judicial Conference, after consultation with a range of interested groups, and by requiring the advice and consent of the Senate. 28 U.S.C. § 991(a). Likewise, Congress limited the President's removal power, restricting removal to cases of "neglect of duty or malfeasance in office or other good cause." *Id.* Limiting the removal power to good cause preserves the judge-Commissioners' independence in their day-to-day Commission activities. *See Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935); *Buckley*, 424 U.S. at 133, 96 S.Ct. at 688. In any event, the President can only remove a judge-Commissioner from his or her office as a Commissioner. Because the judge remains a life-tenured, Article III judge, the President's removal power cannot impair the independence of the judge-Commissioner's performance of his or her Article III functions.

### C

### *Due Process of Law*

■ NACDL contends that the removal power raises an additional constitutional problem regardless of whether the Commission is a Judicial, Legislative, or Executive Branch agency. In sum, NACDL argues that (1) Congress intended the Commission to take over as the sentence decisionmaker from individual courts; (2) due process requires the sentence decisionmaker to be neutral, impartial and independent; (3) the executive or administrative officer represented by the prosecution is an adversary, and it is unconstitutional to have the sentence decisionmaker controlled by the adversary; and (4) the Sentencing Act violates due process because it is impossible for the Commission to maintain the required independence when the Attorney General sits on the Commission and the Commissioners are subject to removal by the President, the chief law enforcement officer for the United States.

NACDL's argument is not supported by authority. First, the Fifth Circuit has upheld the constitutionality of executive authority under the Comprehensive Drug Abuse Prevention and Control Act of 1970, pursuant to which the Attorney General has the power to schedule, reschedule and deschedule drugs. *See United States v. Gordon*, 580 F.2d 827 (5th Cir.1978). Even though the power to schedule drugs in effect allows the executive to determine which drugs are illegal and what penalties will be imposed for illegal manufacture, the Fifth Circuit rejected the defendant's argument that such an arrangement is "inherently unfair." *Id.* at 840; *United States v. Chambless*, 680 F.Supp. 793, 801 (E.D.La. 1988).

Moreover, cases cited by NACDL in support of the need to keep the executive as prosecutor separate from the sentencing decisionmaker are distinguishable. The cases cited concerned situations where the executive was charged with the adjudicatory function. *See Ford v. Wainwright*, 477 U.S. 399, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986) (discussion in context of a governor having the decisionmaking authority con-

---

sation at the higher appellate court rate. 28 U.S.C. § 992(c). Defendants claim that this arrangement violates the Compensation Clause, Article III, § 1. However, the court concludes that the Compensation Clause has no bearing on

the Sentencing Act's constitutionality because the President has no control over a district court judge's compensation for fulfilling his or her Article III duties.

cerning the sanity of a convicted felon subject to the death penalty); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (Mayor occupied both executive office and judicial office simultaneously). By contrast, here Congress continues to define what conduct constitutes a crime and continues to set the maximum, and sometimes the minimum, sentence. While the Commission promulgates guidelines for sentencing, the individual trial court continues to impose sentence. Although the Attorney General sits on the Commission, it is in a nonvoting, *ex officio* capacity.

## IV

### STATUTORY ISSUES

Amicus curiae NACDL asserts the invalidity of the Guidelines on the grounds that they are inconsistent with the Sentencing Act pursuant to which they were promulgated. Pointing to several specific instances, NACDL contends that, instead of following the congressional mandate to issue guidelines assisting judges in their selection among sentencing options, the Commission eliminated options and drastically restricted judges' sentencing discretion contrary to the will of Congress. In addition, NACDL contends that the Guidelines could not take effect because the General Accounting Office ("GAO"), which was directed by Congress to study the guidelines prior to their effective date, did not produce a timely and adequate report and because a supplementary report issued by the Commission was untimely. The court concludes that none of NACDL's arguments have merit.

### A. Probation

■ Although NACDL challenges the Guidelines' treatment of probation, both defendants are subject to a statutorily required minimum term of five years imprisonment under 21 U.S.C. § 841(b)(1)(B). The government correctly contends that, because defendants cannot show injury as a result of the Commission's allegedly illegal conduct in promulgating Guidelines about probation, they lack standing to contest those Guidelines. *Compare Allen v. Wright,* 468 U.S. 737, 754, 104 S.Ct. 3315, 3326, 82 L.Ed.2d 556 (1984). Because defendants have no standing to attack the Guidelines on probation, the court will not consider NACDL's argument on that point.[14]

### B. Prison Overcrowding

■ NACDL argues that the Commission ignored the will of Congress concerning prison overcrowding as expressed in 28 U.S.C. § 994(g). Certainly Congress wanted the Commission to be aware of and "minimize" overcrowding. But, as the legislative history makes clear, this factor was not intended to interfere with the Commission's exercise of its best judgment about appropriate guidelines. *See* Sen.Rep. 175 (the purpose of the requirement to minimize overcrowding "is not intended, however, to limit the Sentencing Commission in recommending guidelines that it believes will best serve the purposes of sentencing"). Moreover, as even NACDL's brief indicates, most of the projected increase in prison population will not result from the Commission's Guidelines, but from the sentencing provisions of the Anti–Drug Abuse Act of 1986 and the Sentencing Reform Act itself.

Nor was it unlawful for the Commission to fail to recommend necessary changes and expansion in prison facilities as a result of the Guidelines before promulgating them. The language of the Act does not require it. There is no timeframe set forth for issuing the recommendations. NACDL's overcrowding arguments are therefore without merit.

### C. Supervisory Release and Maximum Term

■ Pursuant to 28 U.S.C. § 994(a)(1)(C), the Commission promulgated Guidelines requiring the imposition of a term of supervised release whenever a defendant is sen-

---

**14.** The government contends that, as amicus, NACDL cannot raise issues which defendants have no standing to bring before the court. Other than the probation issue, however, the government has not specified which, if any, of NACDL's other challenges would fail on this basis. Therefore the court will address all other arguments.

tenced to more than one year of prison. NACDL argues that this requirement is contrary to congressional will expressed at 18 U.S.C. § 3583(c), where Congress set forth specific "individualized" factors that judges should consider in deciding whether to impose a term of supervised release. NACDL contends that, contrary to the intent of Congress, the Commission's Guidelines wrongfully deprive a defendant of the right to have judges impose supervised release on an individualized basis and unlawfully require a mandatory minimum term of supervised release. Contrary to NACDL's position, however, a judge still has discretion to depart from the Guidelines in appropriate cases. The Commission recognized the possibility of exceptions to the rule, but believes that exceptions should be handled by a departure from the Guidelines. Guidelines Manual, § 5D3.1. The court finds no inherent inconsistency between the Guidelines and congressional intent as set forth in the Sentencing Act.

### D. Fines

NACDL contends that the Sentencing Reform Act permits, but does not require, imposition of a fine, while the Guidelines make fines mandatory. Nevertheless, the court finds that the Guidelines are not inconsistent with the statute. For one thing, the legislative history of the Sentencing Act reflects the view that "fines generally have been an inappropriately under-used penalty in American criminal law." Sen.Rep. 103. Thus, the decision to emphasize fines as a sentencing alternative is not inconsistent with the intent of Congress. Furthermore, judges have discretion to waive any fine upon a finding of inability to pay or undue burden on a defendant's dependents, as well as wide discretion in determining the amount of the fine based on their analysis of the factors set forth in 18 U.S.C. § 3572. Guidelines Manual § 5E4.2.

### E. Cooperation

NACDL contends that, by requiring government certification of the defendant's good faith efforts, the Guidelines un-lawfully restrict judges' ability to reward defendants for substantial cooperation with authorities. NACDL's position is without merit. The portion of the Guidelines to which it refers is a nonbinding policy statement. Guidelines Manual § 5K1.1. Whether or not it is intended to "carry great weight," as the NACDL insists, judges have the power to make their own decisions about rewarding cooperation after considering the policy statement. 18 U.S.C. § 3553(a)(5). From a practical point of view, as the government points out, it is highly unlikely that a judge would lower a defendant's sentence to reward cooperation which the government is unwilling to acknowledge as helpful.

### F. Concurrent Sentences

NACDL argues that the Commission ignored the will of Congress by eliminating judges' exercise of discretion in imposing concurrent sentences. Congress set forth standards for determining whether multiple terms of imprisonment imposed on a defendant should run concurrently or consecutively. 18 U.S.C. § 3584. The statute directs courts to consider the general sentencing factors set forth in 18 U.S.C. § 3553(a) and states that, if the judge is silent on the issue, the terms run consecutively. On this same subject, the Guidelines require that a sentence imposed on a defendant already serving an existing sentence run consecutively if the new offense arose out of a separate transaction. Guidelines Manual § 5G1.3. The Commentary to § 5G1.3 states that the Guidelines reflect the statutory presumption that sentences imposed at different times ordinarily run consecutively. While calling it a presumption may overstate the case, § 3584(a) does resolve the problem of judicial silence on the issue in favor of consecutive sentences. In addition, the Commentary recognizes that § 5G1.3 may not be applicable in all situations by stating that "[d]eparture would be warranted when independent prosecutions produce anomalous results that circumvent or defeat the intent of the guidelines." Therefore, NACDL's objection to Guideline treatment of multiple sen-

tences is not well founded, and the court finds that the Guidelines are consistent with the Sentencing Act.

### G. Disparity in Sentencing

■ One of Congress' fundamental reasons for enacting the Sentencing Reform Act was to end unwarranted sentencing disparities. 28 U.S.C. § 991(b)(1)(B). NACDL argues that, by looking to the length of the defendant's prior sentence in computing the number of points attributed to his or her criminal history, the method used in the Guidelines for deciding the seriousness of a defendant's prior criminal history perpetuates sentence disparity. *See* Guidelines Manual § 4A1.1. While this method perpetuates prior disparities to some degree, NACDL's solution, namely asking judges to focus on the seriousness of the prior offense, is much more unwieldy and time-consuming. The court finds that the Guidelines do not unnecessarily perpetuate the effect of prior sentencing disparity. The Commission recognized the dilemma and sought to "minimize problems with imperfect measures of past crime seriousness" as best it could by focusing on prior sentences. Moreover, "in recognition of the imperfection of this measure," the Guidelines permit "information about the significance or similarity of past conduct underlying prior convictions to be used as a basis for imposing a sentence outside the applicable guideline range."

### H. GAO and Supplementary Reports

■ Pursuant to the Sentencing Act, the initial Guidelines were to become effective on November 1, 1987 after Congress had considered two reports, one from the Commission explaining the reasons for its recommendations to be submitted along with the Guidelines and another from the GAO. Pub.L. 98–473, § 235(a)(1)(B)(ii)(I), (II) and (III). The entire review process from the time the Guidelines were submitted to Congress was to take six months. NACDL insists that the Guidelines could not have gone into effect on November 1, 1987 because neither the Guidelines themselves nor the GAO report was submitted six months before that time. NACDL's argument is without merit.

Although the Commission submitted a Supplementary Report to Congress on June 18, 1987, the Guidelines, along with commentary and comments were available for review by Congress six months before the November 1, 1987 deadline. The court concludes that this initial submission was sufficient to trigger the beginning of the six month review period. As for the GAO report, while Congress did not receive it until September 18, 1988, the Sentencing Reform Act only requires that the GAO report be submitted within 150 days of the date of submission of the Guidelines. This requirement was fulfilled.

Finally, the NACDL argues that the Guidelines could not become effective because the GAO report was inadequate. It is not this court's function to review the adequacy of a report which Congress directed its investigative arm to prepare for its own scrutiny and with which Congress itself has not expressed any dissatisfaction. *United States v. Chambless*, 680 F.Supp. 802 (E.D.La.1988); *see National Association of Government Employees v. Schlesinger*, 397 F.Supp. 894, 899 (E.D.Penn.), *aff'd*, 523 F.2d 1051 (1975); *Committee for Full Employment v. Hills*, 70 F.R.D. 678, 681 (E.D.Penn.1976);

### CONCLUSION

The court rejects the various consitutional challenges to the Sentencing Act, concluding that the Commission's placement, composition, and authority are constitutionally permissible as being in aid of the performance of a judicial function assigned to the Judicial Branch by Congress, rather than the Constitution. Similarly, the court finds that none of NACDL's statutory arguments has any merit. Having found no impediment to the application of the Guidelines in this case, the court will sentence the defendants accordingly.

IT IS NOW, THEREFORE, ordered as follows:.

Defendants motion to preclude use of the Sentencing Guidelines is DENIED.

IT IS SO ORDERED.